KLEES, Judge.
Defendant Jeffery Hawkins was indicted by a grand jury for the first degree murder of Joseph Lee, the indictment was later amended to charge defendant with second degree murder (R.S. 14:30.1). Defendant pleaded not guilty. On October 4, 1989, he was tried by twelve-person jury which found him guilty as charged. Subsequently, defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.
*821 FACTS:
Ricky Wilson lived with his cousin Joseph Lee at 1934 Toledano Street. On the morning of Friday, October 14, 1988, Ricky, who had been sleeping on the living room sofa, was awakened at around 8:00 a.m. by a knock at the door. Lee opened the door, and defendant came in. Defendant had two medallions he wanted to sell to Lee. Defendant said that he had other jewelry he wanted to sell, and he and Lee left for a short period of time before returning.
They returned and sat in the living room while Wilson was in the kitchen washing dishes. He heard Lee say “Jeff, what’s wrong?” Ricky looked and saw defendant standing over Lee with a knife in his hand. Lee, with a stab wound to his chest, lay on the floor behind the door, and defendant held Lee by his shirt and was preparing to stab him again.
Wilson tried to run out the back door, but defendant grabbed him and asked for money. Wilson gave him $200, and defendant then ordered Wilson to get the keys to Lee’s Blazer which Wilson did. Wilson looked at the clock in the living room and saw the time was 9:43. Defendant told Wilson he had a gun under his shirt and to try not to run. They drove around various streets, and at Tchoupitoulas and Louisiana, defendant and Wilson switched places. At that point, defendant told Wilson that Lee had beaten defendant’s sister.
Defendant got on the interstate and drove toward the airport. He missed the airport exit and got off at the next one. Defendant stopped at a service station, and he and Wilson exited the Blazer. Defendant made a telephone call, and Wilson overheard him say “I’m finished doing what I had to do.”
Wilson found an opportunity to escape, and he ran to a nearby Holiday Inn. He asked the two desk clerks to call the police which they did. The clerks testified that Wilson came in after 10:00 a.m. and that he appeared to be scared. Wilson told them that he had been kidnapped and that his cousin had been stabbed. He told them that the man was in a white truck, and he pointed to a white Blazer as it drove past. Neither of the clerks could see anyone in the truck because it had dark tinted windows. Lee’s Blazer was found that afternoon at Tulane Avenue and South Dupre Street.
Wilson selected defendant’s picture out of a photographic lineup.[1] He testified that he had not seen defendant prior to October 14, 1988. Detective Ross Mocklin testified that Wilson told him that the person who had stabbed his cousin had no facial hair. At a pretrial hearing, Wilson testified that the assailant was clean-shaven, but at trial, he testified that the assailant had a light or thin moustache. When defendant was arrested, he had a mous-tache.
Several alibi witnesses testified for defendant. They testified that on the morning of October 14, defendant had accompanied his fiancee’s son to school at 8:30 a.m. to discuss the child’s not having a book. Defendant could not see the teacher that morning, but he did see her after school that day. Another witness testified that he had seen defendant at 9:45 a.m. in front of defendant’s house.
Defendant testified that he and Lee had been friends for several years and that they used to look out for each other. He testified that he last saw Lee on October 13th.
ERRORS PATENT:
A review of the record reveals no errors patent.
ASSIGNMENT OF ERROR:
In his sole assignment of error, defendant complains that the trial court erred in its instruction to the jury regarding reasonable doubt.[2] He argues that because Cage v. Louisiana, — U.S. -, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), found the same jury charge to be unconstitutional, his con *822 viction should be reversed and a new trial ordered.
The trial judge gave the following charge:
If you entertain a reasonable doubt as to any fact or element necessary to constitute the guilt of the defendant, it is your sworn duty to give him the benefit of that doubt and return a verdict of not guilty. However, this doubt must be a reasonable one, that is, one founded on a real, tangible and substantial basis and not upon a mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your mind by reason of the unsatisfactory character of the evidence.
(supp. tr. pp. 2-3)
Defense counsel objected to this charge.
This charge is similar to the one in Cage in that it uses the term “grave uncertainty.” However the charge does not contain the two other phrases found objectionable by the court, “actual substantial doubt” and “moral certainty.” Hence, the charge in question really did not overstate the degree of doubt required as did the objectionable charge in Cage. We conclude that the charge is not erroneous because the jury was not instructed that there had to be an actual substantial doubt rather than a reasonable doubt. Moreover, the jury was not told to find doubt to a moral certainty. Thus we find the charge proper under Cage.
Accordingly the defendant’s conviction and sentence are hereby affirmed.
AFFIRMED.

. Defendant’s motion to suppress the identification was denied.

. Defendant himself filed a pro se brief raising this same error and which is the sole assignment of error. Defense counsel had originally filed a brief raising errors patent only.